**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TAKTL, LLC** a limited liability company, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | 2:18cv1546 |
| ) | **Electronic Filing** |
| **IWR, NORTH AMERICA, LLC** ) | |
| a limited liability company formerly known ) | |
| as IWR BUILDING SYSTEMS, LLC and ) | |
| **ALLIANCE GLAZING** ) | |
| **TECHNOLOGIES, INC.** ) | |
| ) | |
| Defendants/Counterclaim Plaintiffs. ) | |

## MEMORANDUM ORDER

AND NOW, this 1st day of November, 2024, upon due consideration of plaintiff's motion

to compel and the parties' submissions in conjunction therewith, IT IS ORDERED that [216] the

motion be, and the same hereby is, granted.  Defendants shall produce to plaintiff's counsel

without delay a redacted copy of the three settlement agreements that contain the following

unredacted information: 1) the names of the parties; 2) the date of execution; 3) the signatures on

the agreements; and 4) any non-disparagement or other provisions that arguably obligate,

encourage, or commit any individual or entity to testify for defendants or otherwise cooperate

with defendants.

Defendant's efforts to avoid production of the requested documents are unavailing for

several reasons.  First, the unredacted information falls squarely within the permitted purposes

identified in Rule 408.  These expressed purposes recognize the potential relevance of

contractual relationships and/or provisions that might: 1) cause a witness to color or slant his or

her testimony in favor of a party in trial before the court, or 2) otherwise call into question the

impartiality of the witness.  See Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice . . . . ").

Second, most of defendants' "will call" witnesses would be bound by any provision within the scope of the court's order.  This has been made specifically clear by the filing of defendants' witness lists for trial.  While defendants argue that the witnesses enumerated in their previous pretrial statement are irrelevant, their updated witness list indicates otherwise.  See ECF No. 220 at 13 n.4.  Indeed, at least nine of the individuals plaintiff identified as being "employed by the four entities that executed the settlement agreements" (*i.e.*, IWR, AGT, Wheaton, and ACW) are listed as "will call" witnesses by defendants.  ECF No. 217 at 8; see also ECF No. 233 at 1–5.  Thus, the potential relevancy and use of such information for impeachment purposes is quite clear.

Third, defendants' attempt to muddy the waters by reference to the doctrine of judicial privilege is misplaced.  That doctrine only has the potential to come into play should defendants seek to use any requested contractual provisions to rehabilitate their own witnesses in the event they perceive their testimony as unfavorable and in violation of a non-disparagement or cooperation clause(s).  See Binder v. Triangle Publications, Inc., 275 A.2d 53, 56 (Pa. 1971) ("The privilege is also extended to . . . witnesses to encourage their complete and unintimidated testimony in court.").  The doctrine has no application to plaintiff's use of such clauses for the purposes of impeachment or otherwise showing a potential for bias.

Fourth, the relief plaintiff seeks is not precluded by Judge Eddy's December 16, 2020, Memorandum Order denying plaintiff's initial motion to compel disclosure of the IWR/AGT settlement agreement.  Judge Eddy's ruling was grounded solely on the determination that plaintiff's belief that the settlement agreement contained non-disparagement provisions that

might be applicable to discredit the testimony of Mr. Youngblood and other potential witnesses was nothing more than "a vague generalization." ECF No. 99 at 3. As such, production was unwarranted because the request constituted a generalization about the potential ability to impugn the credibility of a single witness and was predicated on little more than a broad assertion of potential relevancy at that juncture. See id. at p. 2–3.

In contrast to the scenario presented to Judge Eddy, the record now makes clear that the settlement agreements may well contain clauses reflecting on the credibility of a significant number of witnesses that defendants have confirmed will testify at trial on their behalf. This stands in sharp contrast with plaintiff's previous indication that it intended to call Mr. Youngblood of IWR to testify on plaintiff's behalf. Thus, the requests are no longer based on the seemingly self-serving selection of a witness associated with an opposing party and/or broad generalizations of speculation or conjecture; instead, they are predicated on a concrete showing that any disclosed contractual provisions will have a direct bearing on plaintiff's ability to challenge the credibility of a number of defendants' specific witnesses.

Moreover, while Judge Eddy did acknowledge plaintiff's willingness to receive a redacted version of the IWR/AGT settlement agreement, her analysis did not focus on the propriety of granting a motion for such limited relief in the future. Id. at 2. And even when a more demanding standard has been applied to the discovery of settlement agreements, courts have still required that a redacted copy of the relevant agreement be produced for impeachment purposes. See Spear v. Fenkell, No. CIV.A. 13-02391, 2015 WL 3947559, at *3 (E.D. Pa. June 26, 2015) ("[I]t does not seem burdensome to require Alliance to produce a redacted copy of the settlement agreement . . . [t]his will provide Stonehenge what it needs to impeach a potential [] witness for bias."); see also MaxLite, Inc. v. ATG Elecs., Inc., No. CV 15-1116 (JMV), 2021

WL 12095134, at *4 (D.N.J. Feb. 17, 2021) (adopting the approach set forth in Spear). Given that Judge Eddy did not explicitly opine on whether plaintiff is entitled to a redacted version of the IWR/AGT settlement agreement at the time of trial, it would be unreasonable to conclude that the December 2020 Memorandum Order ultimately foreclosed such relief—especially since it pertained to only one of the agreements now at issue. But more importantly, because the caselaw shows that although the wholesale disclosure of settlement agreements to a third-party generally is unwarranted, it does firmly establish that plaintiff is still entitled to the minimum information "it needs to impeach a potential [defense] witness for bias." Spear, 2015 WL 3947559, at *3.

Finally, plaintiff's motion is not untimely. Judge Eddy's Memorandum Opinion made clear that as long as plaintiff's request was presented during discovery and grounded in the agreement's potential to lead to evidence that challenged the credibility of plaintiff's own witness, it would be treated as a "broad assertion" and a "vague generalization." ECF No. 99 at 3. When the parties entered the final phase of pretrial development, defendants' use of certain witnesses and the potential to challenge their credibility and establish bias with the contractual provisions became much more particularized and concrete. Plaintiff's current motion is predicated on this showing and was filed when the litigation advanced to point where it reflected the same. As such, the motion has been presented in a timely manner.

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Brian P. Maloney, Esquire
        Chad Allen Wissinger, Esquire
        Christian Jay Myers, Esquire
        Julie A. Mueller, Esquire

Jayme L. Butcher, Esquire
Wellford H. Winstead, Esquire
Brandon A. Levey, Esquire
David Jacobson, Esquire
Mark A. Packman, Esquire
Michael Rush, Esquire
Shawna J. English, Esquire

(*Via CM/ECF Electronic Mail*)